TENNESSEE ENTERPRISES, INC. v. J. N. SCHLESINGER, et al.

Eastern Section. ——— —, ——.

Bachman, Wilkerson & Wilkerson, of Chattanooga, for plaintiff in error.

Joe V. Williams, of Chattanooga, for defendant in error.

SNODGRASS, J.   This is an action for damages, due it was claimed, to an excessive amount of water being precipitated from the roof of the adjoining premises of plaintiff in error on the roof of the premises of defendant in error, in consequence of the negligent failure of the plaintiff in error to sufficiently provide against such a result.   A former proceeding in the Chancery Court involving similar questions between the same parties in which a mandatory injunction had been obtained effecting certain remedial conditions with decree for damages, and a perpetual inhibition against defendant allowing any water to fall upon plaintiffs' roof from defendant's was referred to and plead as res adjudicata and estoppel—against defenses of non-liability, etc.

The present suit placed the damages as occurring on the 15th, day of July, 1927, and after the declaration was amended regarding the manner of connection for conducting the water from the roof of plaintiff in error's building, continued: ''Plaintiffs now aver that on July 15, 1927, a large amount of rain water coming from the defendant's roof and which by reason of the negligent construction of said connections, its insufficient capacity, etc., of the spout coming from defendant's building down spout on plaintiffs' building, gathered at said point on plaintiffs' building and fell or soaked through plaintiffs' building and thereby damaged the plaster, decorations, wall paper, furniture, fixtures and stock of shoes, merchandise etc., owned by plaintiffs in its said building, as a result of which said properties were damaged to the extent of three thousand dollars, all without fault whatever on the part of plaintiffs.''

The plea was not guilty.   Proof was taken and the cause heard before the judge and jury, when a verdict was returned by the jury in favor of the plaintiff below and assessing the damages in the sum of $808.   Judgment was rendered in favor of the plaintiff and against the defendant Tennessee Enterprises, Inc., for this amount; and the

defendant, after it motion for a new trial was overruled has prosecuted an appeal to this court making the following assignment of error:

"1. The court erred in refusing to grant defendants' motion, made at the conclusion of plaintiffs' evidence, and made again at the close of all the evidence in the case, for peremptory instructions to the jury to return a verdict for the defendant.

"2. That there is no evidence to support the verdict.

"3. The verdict is contrary to the weight of the evidence.

"4. The verdict is contrary to law.

"5. The trial court committed reversible error in failing and refusing to charge the jury as requested by defendant, to-wit:

" 'The court charges you, gentlemen of the jury, that if the evidence shows that this defendant, Tennessee Enterprises, Inc., was in possession and control of the building, known as 721 Market Street, at the time of the alleged damages, as charged in the declaration, then it was its duty to use ordinary and reasonable means to take care of the usual and ordinary rain water falling on its roof and not to allow it to fall or run on the roof of plaintiffs' building; but it would not be liable in damages occasioned to plaintiffs by reason of water which fell or ran from its roof during an extraordinary and unusual rainfall which it was not bound to expect nor provide against.'.

"6. The trial court committed reversible error in failing and refusing to charge the jury as further requested by defendant, to-wit:

" 'I charge you further, gentlemen of the jury, that if the defendant was not in the possession of the premises known as 721 Market Street, at the time plaintiffs allege their building at 723 Market Street was flooded by a rainstorm on July 15, 1927, but had leased said premises to a third party who was in possession of same or had subleased the premises to someone else, then the tenant, or the party claiming under him, would be liable for the damages, if any, caused by flooding of plaintiffs' store, as charged in the declaration and defendant would not be liable. The defendant is the landlord to its tenant and the tenant under the law, and not the landlord, is liable to third persons for any accident or injuries occasioned to them by the premises being in a dangerous condition, unless it appears from the evidence that the landlord had either (1) contracted with the tenant to repair; or (2) where the premises, when leased, were in a ruinous condition; or (3) where the landlord expressly licensed the tenant to do acts amounting to a nuisance.' "

A former litigation between these same parties was had in the chancery court which sought a recovery for damages occasioned by a similar overflow. The case is reported as Schlessinger v. Rosenheim, 2 Tennessee Appeal Reports page 529. The bill sought also a mandatory injunction requiring the defendant, the Tennessee En-

terprises, Inc., to remove a down spout or pipe alleged to be so constructed and maintained by them as to throw water from the roof of their building onto the roof of complainants' building and enjoining defendants from causing or permitting water falling on the roof of their building from being thrown onto the roof of complainants' building. The bill also sought to recover damages sustained in two overflows of Dec. 22, 1922; and June 25, 1923. In disposing of the case the court said:

"The chancellor held that complainants were entitled to the mandatory injunction. The same was issued and the down spout or pipe complained of was removed by the defendant, Tennessee Enterprises, Inc., and on final hearing the injunction was made perpetual. The chancellor also decreed that since no notice was given of any alleged defects or nuisance prior to the first overflow, there could be no recovery for damages sustained by the overflow. There was no appeal from this feature of the case. . . . The chancellor further decreed that the Tennessee Enterprises, Inc., was liable to the Walkover Shoe Company for the sum of $823.93, with $88.58 interest from August 9, 1923, the date of the filing of the original bill, a total of $912.51, the same being the total damages sustained from the record overflow, i. e., on June 25, 1923. But no recovery was allowed against Mr. and Mrs. Rosenheim.

"From this decree the Tennessee Enterprises, Inc., alone has appealed to this court and assigned errors making two questions: First, that under the law and the facts as disclosed by the record it was not liable to the Walkover Shoe Company for the damages sustained by it as a result of the second overflow; second, that even if it was liable for some of these damages, it was not liable for the full amount sustained, and was only liable for the part that was caused by the rain water that had fallen on its own building.

"This upon the theory that a part of the water which caused the damage had fallen on the roof of the Piggly-Wiggly building and from there had been thrown onto defendant's building, and then on to complainants' building, and the defendant and the owner of the Piggly were not joint tort-feasors; Citing Swain v. Tenn. Copper Co., 111 Tenn., 430, 78 S. W., 93; Gay v. State, 90 Tenn., 645, 18 S. W., 260; Chapman v. Palmer, 77 N. Y., 51; Miller v. Highland Dutch Company, 87 Calif., 430."

This court affirmed the decree of the chancellor; and this is the cause referred to in the declaration as affording efficacy to the case at bar which was instituted in the circuit court of Hamilton County, Tenn., on July 12, 1928, for the damages occasioned by an overflow of the plaintiffs' roof on July 15, 1927, alleged as due to the negligent construction of said connection as aforesaid, the declaration insisting that defendant negligently failed to use proper care and caution to take care of the water which fell on its building

prior to said day and date; that the defendant negligently failed to provide down spout, etc., on its premises, but negligently and carelessly undertook to use the down spout on the building of the plaintiffs which as stated was insufficient and inadequate to carry away the water falling on defendants' said building.

It was also insisted that in the use of plaintiffs' down spout granted by request it was with the assurance, actual or implied, that if it were allowed to connect with said down spout the defendant would take care of the water falling on its building and would not allow the premises of the plaintiff or their property to be injured and this was plead as res adjudicata against the right of the defendant to plead that it had more than a permissive right growing out of said injunction proceedings to make said connection attended by the assurance aforesaid; and further that it was held that said building 721 Market Street was held to be occupied and in possession, custody, and control of the defendant and that it was liable if anyone, for said conditions, and this was plead as res adjudicata and estoppel against the defendant, to rely for defense otherwise in the instant proceedings.

At the time of the filing of the bill in the cause the defendant Tennessee Enterprises, Inc., was itself a lessee of the building and in charge; and the offense or nuisance seemed to be that it had negligently failed to provide for or was negligently failing to care for the water falling upon its own roof and by reason of the defective down spout had permitted its premises to become somewhat of a nuisance in a consequent discharge of the water accumulations thereon to complainants' roof in such volume as in times of excessive rainfalls with this trespassing burden, its facilities though otherwise sufficient was found inadequate resulting in a pond accumulation of the water which, seeping through, caused the damage.

There was no doubt of the liability of the defendant in the chancery court case; though had there been any, the law of that case has now removed all question. It is however insisted that during the progress of that case the status of the parties was materially changed so that by a lease of the defendant Tennessee Enterprises, Inc., to J. L. Levine who had himself subleased to Harry L. Miller doing business under the name of the Vogue, he was no longer in possession or control of the building but stood in the relation of landlord to his lessee; and was under no obligation to repair but on the contrary such lessee had assumed all obligation; and that therefore, under the rule laid down in Woodfalls on Landlord and Tenant (13 Ed.), 735, which our Supreme Court quoted with approval in the case of Stenberg v. Wilcox, 96 Tenn., 163, 33 S. W., 917, he is not liable in the present case. The rule is as follows: "As regards the liability of landlords to third persons, it may be taken as a general rule that the tenant, and not the landlord, is

liable to third persons, for any accident or injuries occasioned to them by the premises being in a dangerous condition. The only exception to the rule appears to arise when the landlord has either (1) contracted with the tenant to repair, or (2) where he lets the premises in a ruinous condition, or (3) where he has expressly licensed the tenant to do acts amounting to a nuisance.''

It cannot be said that there was any contract with the tenant Levine to repair when the premises were let to him and it may also be said that under the mandatory injunction the defect that caused the overflow and damages in June, 1922, was remedied to the entire satisfaction of the parties, whether effected by any agreement or permission of the parties or not. However the case of Stenberg v. Wilcox, supra, quoted with approval a section from Woods Landlord & Tenant (2 Ed.), p. 1297, as follows: ''The landlord's right of possession being suspended during the term, it follows that his liabilities in respect to the possession are also suspended, except as to such matters or defects in the premises as existed, when the premises were let, arising from the manner of use, or defective construction. If a nuisance existed upon the premises at the time of the lease, the landlord as well as the tenant, is liable for damages resulting therefrom, although it becomes a nuisance by the act of the tenant while using it for ordinary purposes.'' In the case of Young v. Bradford, 12 Lea, 232, the court said: ''The mere ownership of property does not, in the case of realty, carry with it a liability for defects resulting in injury to third persons under all circumstances. By the common law, the tenant or occupier and not the landlord is bound, as between himself and the public, so far to keep the premises in repair that they may be safe for the public. The landlord is liable when he covenants to keep the premises in repair, or where the defect exists at the time of the lease.''

We think this authority as applied to the facts afford sufficient light for the proper disposition of this case. The right to recover we think must rest upon whether or not at the time of the lease to Levine the premises were effected with the character of nuisance such as here insisted. The plaintiffs' insistence is in the face of the adjudication to the contrary, for it must be conceded that he was compelled to make the changes or repairs in the guttering and down spout by a mandatory injunction and later it was adjudicated that this had been done; moreover according to a deposition of one of the complainants in the case, taken afterwards but before final decree, it had been done to the satisfaction of the complainants. This deposition was that of J. W. Schlessinger who was asked: Q. Now after this bill was filed, and within a short time thereafter, state whether or not steps were taken to remedy this condition and prevent water from coming off the roof adjacent to your building on the North on to the roof of your building. A. Yes sir, that

has been done since then. Q. Is the water that accumulates on the building on the north now carried away withcount flowing on your building? A. Positively I don't get any of it that I know of. Q. 66. Has any damage been sustained on account of water leaking through the ceiling of your building since this condition has been corrected? A. No sir.

### Cross-examination.

Q. You say that there has been no trouble in the way of water leaking through since the repairs were made under the injunction based upon your suit? A. No there has been no more. Q. Have there been any rains as heavy as of Dec. 22, 1922, or June 25, 1923? A. We have had some pretty hard rains; I don't know whether the same as the other; have had lots of rain since that. We have never had any water standing on the roof since that.

So that if, by the law of that case, plaintiff is not estopped from claiming that the repairs were insufficient; and that therefore the property when transferred to Levine was incumbered with a nuisance to such an extent, that the Tennessee Enterprises, Inc., continuing to receive rent, continued liable, the burden would certainly be upon the defendant in error to show that there was such a defective construction of the house or such negligence in the repair with respect to caring for the water that falls upon it as that through such negligence the water was so precipitated from the roof of the offending structure as to cause damage to or to impose an unnecessary burden upon the defendant in error in protecting themselves from such damage.

Of course such a condition we think would amount to a private nuisance for which damages would or should be recoverable as well as being subject to abatement at a proper suit of the owners upon whom the irksome servitude was being imposed. But we think it would not amount to a nuisance where property situated as these adjoining properties with proximity of comparatively level surface for the winds contact, that in times of excessive rainfall, when it was coming down in sheets accompanied by high winds that sweeping over surfaces blew water over from roofs to adjoining roofs, unless it appears that such conditions were to be expected that came in quantities to affect damages or make it necessary for the one to be damaged to use precautions only rendered necessary by this imposition.

However we think the duty to so construct and maintain premises so that they are reasonably safe from the infliction of such a nuisance, would be absolute and would continue in the landlord not withstanding any lease. But in this instance we do not think it necessary to discuss the question of the effect of the adjudication that the matter complained of had been remedied; and the sub-

sequent expression of satisfaction therewith and while the testimony of the sons of Mr. Schlessinger is that since the flood of June 25, 1923, they have seen the water at times running over the agencies designed and installed under the injunction to prevent its escape from the Alcazer roof, it was never in any quantities to effect any damages until, as they claim in July, 1927, some four years after the matter had been satisfactorily remedied by the plaintiff in error and the lease made to Levine.

While defendant in error proved that in this last flood and that under the unusual conditions that obtained on July 16, 1927, water did accumulate on the roof of the Walkover building, and that during the heavy rainfall water was precipitated from the roof of the Alcazer to the Walkover building; yet it appears that the down spouts of the Alcazer were also employed in the conduct of the water down to the sewer; and what is more to the point, it was shown that during this rain. the down spout from the plaintiffs' building was at least partially stopped up and prevented the water escaping in quantities as it otherwise might have done.

It is true that it was shown by Messrs. Schlessinger that water was running through their down spout during the rain as they testified that they saw the swirl at the spout. But it was shown by Mr. Eddlestein and Earl Staples that the down spout was partially stopped up . at least and that Earle Staples waded out into the pond of water and pushed the obstruction down with a stick. When this testimony is coupled with the fact that very heavy rains had fallen between the time when the previous defect had been remedied, and July 16, 1927, the time sued for; and that some of these rains had exceeded in rate per minute the rainfall of July 16, 1927; and that the provision made to care for it before the lease to Levine, had done so successfully, we do not think a case was made out supporting the judgment; we therefore feel constrained to sustain the assignment that there is no proof to support the judgment. The same will be reversed and the case dismissed at the cost of defendant in error.

Portrum and Thompson, JJ., concur.